## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## HUNTINGTON DIVISION

DORA J. FULLER,

     Plaintiff,

v.                                                    CIVIL ACTION NO. 3:19-cv-00174

ANDREW SAUL,[1]
Commissioner of Social Security,

     Defendant.


## PROPOSED FINDINGS AND RECOMMENDATION

Plaintiff Dora J. Fuller ("Claimant") seeks review of the final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–83f. (ECF No. 2.) By standing order entered on January 4, 2016, and filed in this case on March 13, 2019, this matter was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 4.) Presently pending before this Court are Claimant's Brief in Support of Judgment on the Pleadings (ECF No. 9) and the Commissioner's Brief in Support of Defendant's Decision (ECF No. 10).

---

[1] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Federal Rule of Civil Procedure 25(d). *See also* 42 U.S.C. § 405(g) (stating that action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **DENY** Claimant's request to reverse the Commissioner's decision (ECF No. 9), **GRANT** the Commissioner's request to affirm his decision (ECF No. 10), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this action from the Court's docket.

## I.   BACKGROUND

### A. Information about Claimant and Procedural History of Claim

Claimant was 50 years old at the time of her alleged disability onset date and 52 years old on the date of the decision by the Administrative Law Judge ("ALJ"). (*See* Tr. at 31, 33, 35.)[2]  She completed school up to the eighth grade. (*Id.* at 35.)  Most recently, she worked in the kitchen at a pizza parlor, and she has also been employed as a telemarketer. (*Id.* at 251.)  Claimant alleges that she became disabled on August 21, 2015,[3] due to bipolar disorder, attention-deficit hyperactivity disorder, chronic obstructive pulmonary disease, fibromyalgia, bronchial asthma, emphysema, "bad left knee," low potassium, high cholesterol, allergies, and low vitamin D. (*Id.* at 241, 249.)

Claimant protectively filed her application for benefits on April 23, 2015. (*Id.* at 12; *see id.* at 222–30.)  Her claim was initially denied on September 15, 2015, and again upon reconsideration on February 10, 2016. (*Id.* at 121–25, 134–40.)  Thereafter, on March 4, 2016, Claimant filed a written request for hearing. (*Id.* at 141–43.)  An administrative hearing was held before an ALJ on March 8, 2018, in Huntington, West Virginia. (*Id.* at 27–68.)  On June 19, 2018, the ALJ entered an unfavorable decision. (*Id.*

---

[2] All references to "Tr." refer to the Transcript of Proceedings filed in this action at ECF No. 8.

[3] Claimant initially gave her alleged onset date as April 23, 2015. (Tr. at 222.)  She later moved to amend her alleged onset date to August 21, 2015 (*id.* at 241), and the ALJ granted her motion (*id.* at 12; *see id.* at 31–32.)

at 9–26.)  Claimant then sought review of the ALJ's decision by the Appeals Council on August 23, 2018.  (*Id.* at 218–21.)  The Appeals Council denied Claimant's request for review on January 22, 2019, and the ALJ's decision became the final decision of the Commissioner on that date.  (*Id.* at 1–5.)

Claimant timely brought the present action on March 11, 2019, seeking judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).  (ECF No. 2.)  The Commissioner filed an Answer (ECF No. 7) and a transcript of the administrative proceedings (ECF No. 8).  Claimant subsequently filed her Brief in Support of Judgment on the Pleadings (ECF No. 9), and in response, the Commissioner filed his Brief in Support of Defendant's Decision (ECF No. 10).  As such, this matter is fully briefed and ready for resolution.

B.  *Relevant Medical Evidence*

The undersigned has considered all evidence of record, including the medical evidence, pertaining to Claimant's arguments and summarizes it here for the convenience of the United States District Judge.

1.  *Evidence Pertaining to Fibromyalgia*

On May 21, 2015, Claimant presented for the first time to a new primary care provider.  (Tr. at 467, 505.)  She reported "Full body Numbness" that had "been ongoing for about 2 weeks."  (*Id.*)  She also related that she had experienced "Diffuse aches all over for years" and "Was told by someone in the past that she had fibromyalgia."  (*Id.*)  Claimant was prescribed a "Trial of gabapentin" for "Probable Fibromyalgia."  (*Id.* at 469, 507.)  At her next appointment on June 17, 2015, Claimant reported that the gabapentin did not help her "Full body Numbness" and that she stopped using it "due to generalized swelling."  (*Id.* at 464, 502.)  Claimant was instructed to discontinue the gabapentin, and

she was given a trial pack of Savella.  (*Id.* at 465, 503.)  Her provider also recommended "additional labs and EMG."  (*Id.*)  She was prescribed Lyrica for the numbness.  (*Id.* at 462, 500.)  On July 31, 2015, Claimant reported that the Lyrica helped.  (*Id.* at 539, 541.)

At appointments with a different primary care provider on March 2, 2017, and June 12, 2017, it was noted that Claimant's fibromyalgia was "stable on Cymbalta."  (*Id.* at 1066, 1070.)  Claimant also told a physician on June 5, 2017, that she had fibromyalgia.  (*Id.* at 1120, 1125.)

> 2. *Opinion Evidence*

>> a. *Stacy Sheppard, RN, MSN, PMHNP-BC*

Stacy Sheppard, RN, MSN, PMHNP-BC ("Ms. Sheppard"), a nurse practitioner who treated Claimant for bipolar disorder beginning in October 2014, wrote a letter dated June 22, 2016, in which she opined, "Due to her current mood instability, recent exacerbation of psychiatric symptoms, it is my medical opinion that [Claimant] cannot attend school or work at this time."  (*Id.* at 670.)

>> b. *Rhonda Leffingwell, APRN, FNP-C*

Rhonda Leffingwell, APRN, FNP-C ("Ms. Leffingwell"), a nurse practitioner who was Claimant's primary care provider at the time, wrote a letter dated August 28, 2017, that stated,

> This letter is being written on behalf of the patient per her request.  The patient is unable to work at this time r/t [sic] multiple health conditions.  This letter is good for 3 months and her condition will be evaluated again at that time.

(*Id.* at 1060.)

### C. *Sequential Evaluation Process*

An individual unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months" is considered to be disabled and thus eligible for benefits. 42 U.S.C. § 423(d)(1)(A). The Social Security Administration has established a five-step sequential evaluation process to aid in this determination. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017). The ALJ proceeds through each step until making a finding of either "disabled" or "not disabled"; if no finding is made, the analysis advances to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The ultimate burden to prove disability lies on the claimant." *Preston v. Heckler*, 769 F.2d 988, 990 n.* (4th Cir. 1985); *see Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012) ("To establish eligibility for . . . benefits, a claimant must show that he became disabled before his [date last insured].").

At the first step in the sequential evaluation process, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not engaged in substantial gainful activity, the ALJ moves on to the second step.

At the second step, the ALJ considers the combined severity of the claimant's medically determinable physical and mental impairments. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The ALJ gleans this information from the available medical evidence. *See Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2001). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements will result in a finding of "not disabled." 20 C.F.R.

§§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015).

Similarly, at the third step, the ALJ determines whether the claimant's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). "A claimant is entitled to a conclusive presumption that he is impaired if he can show that his condition 'meets or equals the listed impairments.'" *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013) (quoting *Bowen v. City of New York*, 476 U.S. 467, 471 (1986)).

"If the first three steps do not lead to a conclusive determination, the ALJ then assesses the claimant's residual functional capacity" ("RFC") before proceeding to the fourth step. *Mascio*, 780 F.3d at 635; *see* 20 C.F.R. §§ 404.1520(e), 416.920(e). The claimant's RFC reflects "her ability to perform work despite her limitations." *Patterson v. Comm'r*, 846 F.3d 656, 659 (4th Cir. 2017); *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016) (defining claimant's RFC as "the most the claimant can still do despite physical and mental limitations that affect his ability to work" (alterations and internal quotation marks omitted)); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The ALJ "first identif[ies] the individual's functional limitations or restrictions and assess[es] his or her work-related abilities on a function-by-function basis," then "define[s] the claimant's RFC in terms of the exertional levels of work." *Lewis*, 858 F.3d at 862. "In determining a claimant's RFC, the ALJ must consider all of the claimant's medically determinable impairments . . . including those not labeled severe" as well as "all the claimant's symptoms, including pain, and the extent to which his symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Monroe*,

6

826 F.3d at 179 (alterations and internal quotation marks omitted); *see* 20 C.F.R. §§ 404.1545(a), 416.945(a).

When the claimant alleges a mental impairment, the first three steps of the sequential evaluation process and the RFC assessment are conducted using a "special technique" to "evaluate the severity of [the] mental impairment[]."    20 C.F.R. §§ 404.1520a(a), 416.920a(a); *see Patterson*, 846 F.3d at 659. Considering the claimant's "pertinent symptoms, signs, and laboratory findings," the ALJ determines whether the claimant has "a medically determinable mental impairment(s)" and "rate[s] the degree of functional limitation resulting from the impairment(s)" according to certain criteria.  20 C.F.R. §§ 404.1520a(b), 416.920a(b); *see id.* §§ 404.1520a(c), 416.920a(c).  "Next, the ALJ must determine if the mental impairment is severe, and if so, whether it qualifies as a listed impairment."  *Patterson*, 846 F.3d at 659; *see* 20 C.F.R. §§ 404.1520a(d), 416.920a(d).  "If the mental impairment is severe but is not a listed impairment, the ALJ must assess the claimant's RFC in light of how the impairment constrains the claimant's work abilities."  *Patterson*, 846 F.3d at 659.

After assessing the claimant's RFC, the ALJ at the fourth step determines whether the claimant has the RFC to perform the requirements of her past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv); *Monroe*, 826 F.3d at 180.  If she does not, then "the ALJ proceeds to step five."  *Lewis*, 858 F.3d at 862.

The fifth and final step requires the ALJ to consider the claimant's RFC, age, education, and work experience in order to determine whether she can make an adjustment to other work.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  At this point, "the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in

the national economy.'" *Lewis*, 858 F.3d at 862 (quoting *Mascio*, 780 F.3d at 635). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." *Id.* (quoting *Mascio*, 780 F.3d at 635). If the claimant can perform other work, the ALJ will find her "not disabled." 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If she cannot perform other work, the ALJ will find her "disabled." *Id.*

Applying the sequential evaluation process in this case, the ALJ determined that Claimant had not engaged in substantial gainful activity since the alleged onset of her disability. (Tr. at 14.) He found that Claimant's bilateral knee osteoarthritis, degenerative disc disease of the cervical spine, stage three chronic kidney disease, attention deficit hyperactivity disorder, bipolar disorder, and anxiety disorder constituted "severe" impairments. (*Id.*) However, he found that those impairments, or a combination thereof, failed to meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 15.) Upon assessing Claimant's RFC, the ALJ determined that Claimant is able "to perform light work, except that she can "frequently climb ramps and stairs," "frequently balance, stoop, kneel, and crouch," and "occasionally crawl" but "never climb ladders, ropes, or scaffolds." (*Id.* at 16.) He further found that Claimant should "avoid frequent exposure to temperature extremes, wetness, humidity, vibration, pulmonary irritants, unprotected heights, and moving mechanical parts." (*Id.*)    In addition, the ALJ concluded that Claimant "can understand, remember and carry out simple, routine 1-2 step tasks that do not require satisfaction of production quotas; can make, and can adapt to, simple work-related decisions and routine work-related changes; and can occasionally interact with coworkers and the general public." (*Id.* at 16–17.)

The ALJ noted that Claimant is "closely approaching advanced age" and "has a limited education." (*Id*. at 20.) He further noted that "[t]ransferability of job skills is not an issue because [Claimant] does not have past relevant work." (*Id*.) Because the ALJ determined that Claimant was unable to perform the full range of light work, he enlisted a VE to aid in his finding that Claimant is capable of working as a garment sorter, inspector, or packager. (*Id*. at 21.) As a result, the ALJ concluded that Claimant "has not been under a disability . . . since April 23, 2015." (*Id*.)

## II.    *LEGAL STANDARD*

This Court has a narrow role in reviewing the Commissioner's final decision to deny benefits: it "must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam)). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and it must be "more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). In other words, this Court "looks to [the] administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations." *Id*. (alteration omitted). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. "In reviewing for substantial evidence, [this Court] do[es] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Johnson*, 434 F.3d at 653 (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Even if "reasonable minds [could] differ as to whether a claimant is disabled," this Court upholds the ALJ's decision if it is supported by substantial evidence. *Id*. (quoting *Craig*, 76 F.3d at 589).

### III.    ANALYSIS

Claimant argues that the ALJ failed to develop the record by not "order[ing] a tender point examination" to determine whether her "severe 'fibromyalgia-like' symptoms" were caused by fibromyalgia.  (ECF No. 9 at 5–6.)  She further asserts that the ALJ improperly accorded "no weight" to the opinions of Ms. Sheppard and Ms. Leffingwell that Claimant was disabled.  (*Id.* at 6–7.)  Finally, Claimant contends that she "'grids out' . . . at the sedentary exertional level [on her fiftieth birthday] pursuant to Grid Rule 201.09."  (*Id.* at 7.)  Claimant asks this Court to award her benefits or to remand this matter to the ALJ.  (*Id.* at 8.)  The Commissioner responds that the ALJ had no obligation to request more information as to Claimant's fibromyalgia because Claimant admits that the medical evidence does not satisfy the requirements of SSR 12-2p and that the ALJ was similarly not required to consider Claimant's "fibromyalgia-like" symptoms when determining her RFC.  (ECF No. 10 at 9–13.)  The Commissioner also argues that the ALJ properly weighed Ms. Sheppard's and Ms. Leffingwell's opinions (*id.* at 13–16) and that GRID Rule 202.10 applies in Claimant's case (*id.* at 17–19).

### A.  Duty to Develop Record

Claimant first argues that the ALJ erred by not "order[ing] a tender point examination" to confirm her fibromyalgia as a medically determinable impairment despite multiple references to fibromyalgia in the record.  (ECF No. 9 at 5–6.)  In general, "the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on evidence submitted by the claimant when that evidence is inadequate."  *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986); *Thompson v. Colvin*, No. 3:14-cv-15949, 2015 WL 13746683, at *13 (S.D.W. Va. June 30, 2015) ("[A]n ALJ has the duty to fully and fairly develop the record."),

10

*adopted by* 2015 WL 5626513 (S.D.W. Va. Sept. 24, 2015). However, the ALJ "is not required to act as Claimant's counsel" and may "presume that Claimant's counsel presented Claimant's strongest case for benefits." *Perry v. Astrue*, No. 3:10-cv-01248, 2011 WL 5006505, at *15 (S.D.W. Va. Oct. 20, 2011). In other words, "[C]laimant, through counsel, [may not] rest on the record . . . and later fault the ALJ for not performing a more exhaustive investigation." *Id.* (quoting *Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008)). "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Id.* at *16 (quoting *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001)).

Here, the ALJ found that Claimant's fibromyalgia was not a medically determinable impairment because "[t]here is no evidence of a tender point exam for fibromyalgia or blood work to rule out arthritis." (Tr. at 15.) Claimant agrees that the medical evidence presently in the record does not satisfy the requirements set out in SSR 12-2p for establishing fibromyalgia as a medically determinable impairment. (ECF No. 9 at 6.) But she argues that in light of the references to fibromyalgia in the record, the ALJ was obligated to order the testing necessary to meet the criteria in SSR 12-2p before making a decision about her case. (*Id.* at 5–6.)

Claimant's contention effectively seeks to improperly shift the burden to prove her disability to the Commissioner. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof . . . ."); *see also Lichlyter v. Astrue*, No. 6:11-cv-00597, 2012 WL 4378142, at *2 (S.D.W. Va. Sept. 25, 2012) ("[T]he ALJ's duty to develop the record does not excuse the claimant from proving her disability." (citing 20 C.F.R. § 404.1512(a))).

Claimant, not the Commissioner, bears the burden "to establish by objective medical evidence that . . . she has a medically determinable impairment."  SSR 12-2p, 2012 WL 3104869, at *3 n.8 (July 25, 2012); *see Flesher v. Berryhill*, 697 F. App'x 212, 212 (4th Cir. 2017) (per curiam) ("In order to establish entitlement to benefits, a claimant must provide evidence of a medically determinable impairment that precludes returning to past relevant work and adjustment to other work."); *Nexsen v. Colvin*, No. 0:14-cv-04420-RBH, 2015 WL 7184706, at *8 (D.S.C. Nov. 13, 2015) (report and recommendation of magistrate judge) ("Whether he is represented or not, the claimant bears the burden of proof, and he is responsible for providing evidence to support his application and demonstrate disability." (citing 20 C.F.R. § 404.1512(a), (c); 42 U.S.C. § 423(d)(5)(A))).

She did not meet that burden with respect to her claimed impairment of fibromyalgia.  The few record references to fibromyalgia that Claimant cites do not even include an actual, explained diagnosis of fibromyalgia by any medical provider.  (Tr. at 464, 469, 502, 507, 538, 1066, 1070, 1120, 1125; *see* ECF No. 9 at 5–6.)  The closest medical evidence of record reflecting a diagnosis is a treatment note from Claimant's primary care physician dated May 21, 2015, which references "Probable Fibromyalgia" based on Claimant's representation that she "[w]as told by someone in the past that she had fibromyalgia."  (Tr. at 467, 469.)  Still, Claimant seems to suggest that the ALJ was required to make her case for her with respect to that alleged impairment.  (ECF No. 9 at 6.)  But the "ALJ is under no obligation to supplement an adequate record to correct deficiencies in a plaintiff's case."  *Lehman v. Astrue*, 931 F. Supp. 2d 682, 693 (D. Md. 2013) (citing *Rice v. Chater*, 53 F.3d 329 (4th Cir. 1995) (table) (per curiam), 1995 WL 253134, at *2).

12

The ALJ may order a consultative examination when the claimant's "medical sources cannot or will not give . . . sufficient medical evidence about [the claimant's] impairment for [the ALJ] to determine whether [the claimant is] disabled." 20 C.F.R. §§ 404.1517, 416.917. A consultative examination is particularly appropriate "to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow [the ALJ] to make a determination or decision on [the] claim." *Id.* §§ 404.1519a(b), 416.919a(b). But those circumstances are not present in this case. The record does not contain inconsistent evidence about whether Claimant suffers from fibromyalgia; rather, as the undersigned discussed above, it includes virtually no evidence about such a diagnosis. And the ALJ plainly did not need additional evidence to make a decision related to Claimant's alleged fibromyalgia, since Claimant concedes that the available evidence does not establish fibromyalgia as a medically determinable impairment under SSR 12-2p. (ECF No. 9 at 6.) Put simply, the ALJ is not required to order a consultative examination, *Bishop v. Barnhart*, 78 F. App'x 265, 268 (4th Cir. 2003) ("[T]he ALJ has discretion in deciding whether to order a consultative examination."); *Paxton v. Berryhill*, No. 2:18-cv-00493, 2019 WL 1376073, at *2 (S.D.W. Va. Mar. 27, 2019) ("[I]t was within the ALJ's discretion whether to order a consultative examination. He was not required, by law, to do so."), and there was no reason to do so here.

Moreover, after granting Claimant's request to keep the record open for an additional fourteen days following the hearing so that Claimant could obtain fibromyalgia testing, the ALJ closed the record and proceeded to issue a decision not because of his own deadline but because Claimant asked him to do so. (Tr. at 65–66, 317–18.) By letter dated March 22, 2018, Claimant's counsel explained to the ALJ that Claimant's

fibromyalgia examination was scheduled for July 10, 2018.  (*Id.* at 317.)  Rather than requesting that the ALJ keep the record open until after the examination, Claimant's counsel stated, "I trust that you do not want to leave the record open for that long a period of time" and asked that the ALJ "complete the decision-making process."  (*Id.* at 317–18.)  "The ALJ's duty [to develop the record] only extends so far, and does not allow the claimant to later allege that the record, which the claimant presented as complete, should have included more documentation."  *Ferrell v. Astrue*, No. 3:11-cv-00503, 2012 WL 4378126, at *3 (S.D.W. Va. Sept. 25, 2012) (citing *Maes*, 522 F.3d at 1097).  Notably, Claimant does not argue that the scheduled examination was completed or that the results rendered her alleged fibromyalgia a medically determinable impairment[4] under SSR 12-2p.  (*See* ECF No. 9 at 5–6.)  Remand for further development is appropriate only when the claimant demonstrates that "she could and would have adduced evidence that might have altered the result."  *Thompson*, 2015 WL 13746683, at *13 (describing prejudice standard necessitating remand) (quoting *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000)).  Claimant has not met that burden here.

As such, the undersigned **FINDS** that the ALJ was not required to order a tender point examination of Claimant in this case.

---

[4] To the extent Claimant argues that the ALJ should have considered her "fibromyalgia-like" symptoms in determining her RFC (*see* ECF No. 9 at 6), her argument is without merit.  As the Commissioner points out, the ALJ need only consider Claimant's "medically determinable impairments of which [the ALJ is] aware" when conducting the RFC assessment.  *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016) (quoting *Mascio v. Colvin*, 780 F.3d 632, 635 (4th Cir. 2015)).  Likewise, the ALJ is not required to consider alleged symptoms not caused by a medically determinable impairment.  *See id.* ("When the medical signs or laboratory findings show that the claimant has a medically determinable impairment(s) that could reasonably be expected to produce his symptoms, such as pain, the ALJ must then evaluate the intensity and persistence of the claimant's symptoms so that the ALJ can determine how his symptoms limit his capacity for work." (quoting 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1)) (alterations omitted)).  Still, the ALJ took into account Claimant's testimony about her "fibromyalgia pain."  (Tr. at 17.)

B. *Opinions of Treating Providers*

Claimant next argues that the ALJ improperly gave "no weight" to Ms. Sheppard's opinion that Claimant "cannot attend school or work at this time" (Tr. at 670) and Ms. Leffingwell's opinion that Claimant "is unable to work at this time" (*id.* at 1060). (ECF No. 9 at 6–7.) She seems to suggest that these statements were entitled to significant weight because Ms. Sheppard and Ms. Leffingwell are "treating sources." (ECF No. 9 at 7.) Generally, "a treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).

However, "only an 'acceptable medical source' may qualify as a treating source that offers an opinion entitled to controlling weight." *Baker v. Colvin*, No. 0:14-cv-4249-PJG, 2016 WL 527054, at *6 (D.S.C. Feb. 9, 2016) (citing SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006)). Nurse practitioners like Ms. Sheppard and Ms. Leffingwell do not constitute "acceptable medical sources" under the applicable regulations, and their opinions "do not command controlling weight in the same manner as acceptable medical sources." *Id.* The ALJ explained this in rejecting their opinions, specifically reasoning that Ms. Sheppard and Ms. Leffingwell were "not qualified to render opinions on vocational factors" or "for the purpose of establishing medically determinable impairments." (Tr. at 19–20.) The ALJ is permitted to discount opinion evidence from a source that is not "medically acceptable" under the applicable regulations. *Aanenson v. Berryhill*, No. 5:16-cv-661-FL, 2017 WL 4269470, at *4 (E.D.N.C. Sept. 26, 2017) (concluding that ALJ "properly gave only partial weight to the opinions of Eves because, as a nurse practitioner, Eves is not a 'medically acceptable source'"); SSR 06-03p, 2006 WL 2329939, at *5 ("The fact that a

medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source' because . . . 'acceptable medical sources' 'are the most qualified health care professionals.'"); *see* 20 C.F.R. § 416.927(a)(1), (c)(2). Thus, the ALJ did not err by doing so here.

The ALJ is nonetheless obligated to evaluate opinions from sources that are not "medically acceptable" under the applicable regulations and does so in much the same way as with a "medically acceptable source." SSR 06-03p, 2006 WL 3239939, at *4; *Jones v. Berryhill*, 681 F. App'x 252, 256 (4th Cir. 2017) (per curiam) ("ALJs generally should explain the weight given to opinions from these other sources." (internal quotation marks omitted)). Specifically, the ALJ considers "[h]ow long the source has known and how frequently the source has seen the individual; [h]ow consistent the opinion is with other evidence; [t]he degree to which the source presents relevant evidence to support an opinion; [h]ow well the source explains the opinion; [w]hether the source has a specialty or area of expertise related to the individual's impairment(s); and [a]ny other factors that tend to support or refute the opinion." SSR 06-03p, 2006 WL 3239939, at *4–*5; *see Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (per curiam) (listing factors to consider when evaluating medical opinions). The ALJ did so here.

In addition to stating that Ms. Sheppard and Ms. Leffingwell did not qualify as acceptable medical sources, the ALJ rejected their opinions as inconsistent with contemporaneous treatment notes. (Tr. at 19–20.) With respect to Ms. Sheppard, the ALJ explained that her treatment notes from the date of the opinion letter reflected "other than anxious affect, [Claimant's] mental status exam was normal, with appropriate, calm, cooperative, and pleasant behavior, good eye contact, normal speech, euthymic mood,

16

happy affect, normal thought content, no psychosis, normal thought process, good insight and judgment, intact cognition, and appropriate fund of knowledge." (*Id.* at 19.) The ALJ also noted that Claimant "stated that her medications were working well without side effects, she planned on moving into a larger apartment at the end of the month, and she was excited about the possibility of her grandchildren spending the night." (*Id.*) And with respect to Ms. Leffingwell, the ALJ explained that her opinion was not well-supported and was inconsistent with her most recent treatment notes, which themselves were unclear. (*Id.* at 20.) The ALJ is entitled to discount opinion evidence for these reasons. *Jones*, 681 F. App'x at 256 (holding that ALJ properly assigned "little weight" to opinion where source "did not cite objective medical evidence in support of his opinion" and it was incomplete, internally inconsistent, and inconsistent with record).

The ALJ also discounted Ms. Sheppard's and Ms. Leffingwell's opinions because they were "temporary." (Tr. at 19–20.) Indeed, as the Commissioner points out (ECF No. 10 at 14), an individual is not considered to be disabled unless his conditions prevent him from working "for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). This is a permissible reason to reject a medical opinion. *Koonce v. Apfel*, 166 F.3d 1209 (4th Cir. 1999) (per curiam) (table), 1999 WL 7864, at *3.

Lastly, the ALJ properly rejected Ms. Sheppard's and Ms. Leffingwell's opinions because they related to "a legal conclusion that is reserved solely to the Commissioner." (Tr. at 20.) Indeed, the determination about whether a claimant is "disabled" or "unable to work" falls within the exclusive province of the Commissioner. 20 C.F.R. § 416.927(d)(3) ("We will not give any special significance to the source of an opinion on issues reserved to the Commissioner . . . ."); *Hadley v. Berryhill*, No. 3:18-cv-01190, 2019 WL 1063401, at *14 (S.D.W. Va. Feb. 13, 2019) ("[T]o the extent that Ms. Leffingwell

17

opined that Claimant was disabled as a result of her impairments, the ALJ was under no duty to give any special significance to that opinion."), *adopted by* 2019 WL 1061676 (S.D.W. Va. Mar. 6, 2019).

In sum, the ALJ accorded "no weight" to Ms. Sheppard's and Ms. Leffingwell's opinions for permissible reasons that he adequately explained. As such, the undersigned **FINDS** that there was no error. *Vest v. Colvin*, No. 2:15-cv-05886, 2016 WL 5334668, at *3 (S.D.W. Va. Sept. 22, 2016) ("[W]hile an ALJ may not reject medical evidence for no reason or for the wrong reason, an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the [relevant factors], if he sufficiently explains his rationale and if the record supports his findings." (quoting *Wireman v. Barnhart*, No. 2:05-cv-00046, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006))); *see Baker*, 2016 WL 527054, at *6 ("[T]he reviewing court should leave untouched an ALJ's decision regarding the weight afforded a medical opinion unless the ALJ failed to give sufficient reason for the weight afforded.").

### C. *Application of GRID Rule 201.09*

Finally, Claimant argues that the ALJ should have deemed her disabled pursuant to GRID Rule 201.09. (ECF No. 9 at 7.) "The Medical–Vocational Guideline (GRID) Rules . . . reflect the major functional and vocational patterns encountered in cases that cannot be evaluated on medical considerations alone, where an individual with a severe medically determinable physical or mental impairment is not engaging in substantial gainful activity and the individual's impairment prevents the performance of his vocationally relevant past work." *Loudermilk v. Astrue*, No. 1:07-cv-141, 2009 WL 2584733, at *7 (N.D.W. Va. Aug. 18, 2009). The GRID rules may be used at step five of the sequential evaluation process to aid the Commissioner in meeting his burden to

18

"prov[e] that significant numbers of jobs exist in the national economy" that the claimant may perform. *Bisceglia v. Colvin*, No. 3:15-cv-83 (JRS), 2016 WL 8715582, at *4 (E.D. Va. Feb. 19, 2016) (citing *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987)), *adopted by* 173 F. Supp. 3d 326 (E.D. Va. 2016). "Where the findings of fact made [by the ALJ] with respect to a particular individual's vocational factors and [RFC] coincide with all of the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled." 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(a). But if "any one of the findings of fact does not coincide with the corresponding criterion of a rule, the rule does not apply in that particular case and, accordingly, does not direct a conclusion of disabled or not disabled." *Id.*

GRID Rule 201.09, which Claimant contends applies here (ECF No. 9 at 7), provides that an individual who is limited to sedentary work, is closely approaching advanced age, has a limited education, and has unskilled or no previous work experience should be considered disabled. *Id.* § 201.00 tbl.1. However, the ALJ found that Claimant had the RFC to perform a limited range of *light* work. (Tr. at 16.) Claimant asserts that "at a minimum," she is limited to "sedentary activity," but she fails to explain why that is so and cites no record evidence to support such a contention. (ECF No. 9 at 7.)

Regardless, the ALJ's RFC findings are supported by substantial evidence. As to Claimant's alleged physical impairments, the ALJ described Claimant's diagnoses of bilateral knee osteoarthritis and degenerative disc disease of the cervical spine. (Tr. at 18.) He noted that "the record reflects no orthopedic treatment whatsoever" and "no follow up since November 6, 2015." (*Id.*) The ALJ also referred to Claimant's hearing testimony that she did not use prescription medications but sometimes used Tylenol. (*Id.*) However, in giving only partial weight to the opinion of a state-agency medical

19

consultant, the ALJ rejected the consultant's finding that Claimant was "capable of a reduced range of medium work," instead reasoning that Claimant's bilateral knee osteoarthritis and degenerative disc disease of the cervical spine limited her to light work. (*Id.* at 19.)  Still, the ALJ adopted the consultant's opinions about Claimant's postural limitations because they were "consistent with the record as a whole." (*Id.*)  Put simply, the ALJ discussed "which evidence [he] found credible and why" and "specific[ally] appli[ed] the pertinent legal requirements to the record evidence." *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013); *see Young-Schonyers v. Colvin*, No. 0:13-cv-02951-JMC, 2015 WL 1522367, at *7 (D.S.C. Mar. 31, 2015) ("The ALJ adequately explained his RFC findings and cited to the evidence of record forming the basis for his determination . . . .").

Because the ALJ properly concluded that Claimant was limited to light work, not sedentary work, GRID Rule 201.09 does not apply in this case.  20 C.F.R. § 416.969 ("[W]e do not apply these rules if one of the findings of fact about the person's vocational factors and [RFC] is not the same as the corresponding criterion of a rule.").  Moreover, the GRID rules "are not to be treated as conclusive" when the claimant "has nonexertional limitations in addition to exertional limitations." *Gordon v. Berryhill*, No. 2:17-cv-02280-MGL-MGB, 2019 WL 653966, at *10 (D.S.C. Jan. 28 2019) (citing 20 C.F.R. § 404.1569; *Roberts v. Schweiker*, 667 F.2d 1143, 1145 (4th Cir. 1981); *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996)), *adopted by* 2019 WL 652073 (D.S.C. Feb. 14, 2019).  The ALJ's RFC findings in this case include several nonexertional limitations.  (Tr. at 16–17.) *See Gordon*, 2019 WL 653966, at *11 ("The proper inquiry . . . is whether a given nonexertional condition affects an individual's [RFC] to perform work of which he or she is exertionally capable." (citing *Smith v. Schweiker*, 719 F.2d 723, 725 (4th Cir. 1984))).

Therefore, "the Commissioner, in order to prevail, must be required to prove by VE testimony that, despite the claimant's combination of nonexertional and exertional impairments, specific jobs exist in the national economy which he or she can perform." *Id.* (citing *Grant v. Schweiker*, 699 F.2d 189, 192 (4th Cir. 1983)).  The Commissioner should also rely on VE testimony at step five where, as here, the ALJ finds that an individual has the RFC to perform less than the full range of light work.  *See Gibson v. Astrue*, No. 3:10-cv-226, 2010 WL 4789659, at \*4–\*5 (E.D. Va. Oct. 27, 2010), *adopted by* 2010 WL 4788211 (E.D. Va. Nov. 16, 2010).  The ALJ did so here.  (Tr. at 21.)  It was not error.

Accordingly, the undersigned **FINDS** that the ALJ was not obligated to apply GRID Rule 201.09 to Claimant.

## IV.    CONCLUSION

For the foregoing reasons, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **DENY** Claimant's request to reverse the Commissioner's decision (ECF No. 9), **GRANT** the Commissioner's request to affirm his decision (ECF No. 10), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this action from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED** and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b), the parties shall have fourteen (14) days from the date of the filing of this Proposed Findings and Recommendation to file with the Clerk of this Court specific written objections identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection.

Extension of this time period may be granted for good cause shown.  Copies of any objections shall be served on opposing parties and provided to Judge Chambers.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Fourth Circuit Court of Appeals.  28 U.S.C. § 636(b)(1); *see Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).

The Clerk is **DIRECTED** to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

ENTER: January 13, 2020

Dwane L. Tinsley
United States Magistrate Judge